### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

HAROLD JOHNSON,

    Plaintiff,

  v.

STATEWIDE INVESTIGATIVE
SERVICES, INC. a/ka/ STATEWIDE
GUARD,

    Defendant.

Case No. 20 C 1514

Magistrate Judge Sunil R. Harjani

### MEMORANDUM OPINION AND ORDER

Plaintiff Harold Johnson brings this action against his former employer Statewide Investigative Services, Inc. alleging age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* Currently before the Court are: (1) Defendant's Motion for Sanctions and to Compel Deposition of Plaintiff stemming from Plaintiff's counsel's conduct at Plaintiff's deposition and (2) Plaintiff's Motion for Sanctions arising from Defendant's disclosure of five new witnesses on the day fact discovery closed. These motions are the latest disputes in a contentious litigation. The Court previously "advise[d] both counsel to turn the temperature down and work cooperatively and civilly to complete discovery in this case." Doc. 45. That advice was not taken. The Court issues this Memorandum Opinion to emphasize the importance of collegiality and the need for a high level of professionalism among attorneys in the conduct of discovery, especially in the midst of a pandemic. Here, in particular, the lack of cooperation and civility in a videoconference deposition resulted in a myriad of issues that were grounded in mistrust and unprofessionalism.

For the reasons stated below, the Court denies Defendant's motion for sanctions [48] and denies the portion of the motion seeking to re-depose Plaintiff as moot. The Court also denies

Plaintiff's motion for sanctions [54]. Defendant's request for oral argument on its sanctions motion, set forth in its reply brief, is denied. The Court finds these matters, which were fully briefed, appropriate for resolution without oral argument

## A. Defendant's Motion for Sanctions and to Compel Deposition of Plaintiff

Plaintiff Johnson was deposed on December 4, 2020, and defense counsel terminated Plaintiff's deposition after approximately one hour. Defendant now argues that Plaintiff's attorney's behavior at the deposition warrants the imposition of sanctions because it prevented her from conducting a fair examination of Plaintiff. Specifically, Defendant asserts that Plaintiff's counsel, Barry Gomberg, instructed the witness not to answer, objected to questions as "asked and answered" when the questions were never answered, made speaking objections, coached the witness, and engaged in "general obstructiveness." Doc. 48 at 6-8. For relief, Defendant's motion seeks to re-depose Plaintiff and: (1) an order striking Mr. Gomberg's objections during Plaintiff's deposition; (2) a finding that Mr. Gomberg's conduct during the deposition was willful; (3) "[a]n order that an adverse inference presumption exists as to the nature of Mr. Johnson's testimony;" (4) an order striking and dismissing Plaintiff's complaint and/or entering a default judgment in favor of Defendant; and (5) "[a]n order for sanctions pursuant to Federal Rule of Civil Procedure 30(d)(2) and an order that Plaintiff must pay for all costs of the Harold Johnson deposition and attorneys' fees relating to this Motion and the Rule 37 conference and relating thereto and the deposition itself." *Id*. at 8.

Federal Rule of Civil Procedure 30 governs conduct occurring during a deposition. Objections at the time of the examination "must be noted on the record, but the examination still

proceeds; the testimony is taken subject to any objection."[1] Fed. R. Civ. P. 30(c)(2). An objection is to be "stated concisely in a nonargumentative and nonsuggestive manner." *Id.* "The advisory committee's comments instruct that argumentative objections, suggestive objections, and directions to a deponent not to answer, improperly disrupt, prolong, and frustrate deposition testimony." *Security Nat. Bank of Sioux City, IA v. Day*, 800 F.3d 936, 942 (8th Cir. 2015). Moreover, "an excessive number of unnecessary objections may itself constitute sanctionable conduct." Fed. R. Civ. 30(d)(2), Advisory Committee Notes to 1993 Amendment. The only grounds for not answering a question at a deposition are to: (1) preserve privilege; (2) enforce a limitation ordered by the court; or (3) present a motion under Rule 30(d)(3) to terminate or limit a deposition on the ground that "it is being conducted in bad faith or in a manner than unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(c)(d), 30(d)(3)(A); *see also* Seventh Circuit's Standards for Professional Conduct, "Lawyers' Duties to Other Counsel," Std. No. 21 ("We will not obstruct questioning or object to deposition questions unless necessary under the applicable rules to preserve an objection or privilege for resolution by the court.").

Defendant seeks sanctions under Federal Rules of Civil Procedure 30(d)(2) and 37. Doc. 48 at 2-3. A court has discretion to "impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of a deponent." Fed. R. Civ. P. 30(d)(2). "This sanction may be imposed on a non-party witness as well as a party or attorney." Fed. R. Civ. 30(d)(2), Advisory Committee

---

[1] Form objections must be made during the deposition to avoid waiver because they can be corrected at that time. Fed. R. Civ. P. 32(d)(3)(B). Objections to relevance or materiality are not waived by failing to object during a deposition. Fed. R. Civ. P. 32(d)(3)(A).

Notes to 1993 Amendment. Moreover, when "a deponent fails to answer a question asked under Rule 30 or 31[,]" the "party seeking discovery may move for an order compelling an answer[.]" Fed. R. Civ. P. 37(a)(3)(B)(i). If a motion to compel is granted, then Rule 37(a)(5)(A), requires the party or attorney whose conduct necessitated the motion "to pay the movant's reasonable expense incurred in making the motion, including attorney's fees" absent certain exceptions. Fed. R. Civ. P. 37(a)(5)(A).

The Court takes the allegations by Ms. Lopp Mathias (counsel for Defendant) very seriously and has carefully reviewed the deposition transcript and listened to the audio recording of the deposition.[2] Applying the above principles, the Court addresses each type of alleged misconduct below and concludes that sanctions are not appropriate.

### 1. Instruction Not to Answer/Asked and Answered Objections

Defendant first asserts that Mr. Gomberg "continually interrupt[ed] Johnson while he [was] responding to Statewide's questions and instruct[ed] him not to answer or object[ed] with 'asked and answered' even when the question was never answered." Doc. 48 at 3-4. The Court has reviewed the examples cited by Defendant and found only one instance where Mr. Gomberg instructed Plaintiff not to answer a question:

Q. Okay. And in this photo you're wearing the white shirt, correct?

A. Yes, ma'am.

Q. Okay. Which signifies that you're a chief or a supervisor, right?

A. (No response.)

Q. You can answer.

A. (No response.)

---

[2] The Court notes that the audio recording of the deposition repeatedly cuts in and out throughout the deposition.

Q.      Did you hear my question, sir?

A.      I heard it.

MR. GOMBERG:      Don't - - Don't answer the question.

BY MS. MATHIAS:

Q.      You can answer.

MR. GOMBERG:      I instructed him not to answer.

MS. MATHIAS:      You instructed him not to answer?

MR. GOMBERG:      You're harassing him.  You're trying to change his testimony.  You're mischaracterizing his testimony.  You've asked him about the shirt three or four times.

MS. MATHIAS:      Okay.  You're - - Sir, you're not allowed to instruct your client not to answer unless I'm asking for something privileged or there's an extreme violation.

MR. GOMBERG:      Well, I'm - - I'm entitled to protect my client from harassment.  And that's what you're doing.

MS. MATHIAS:       Okay.  All right.

MR. GOMBERG:      Why are you laughing?

BY MS. MATHIAS:

Q.      So - -

MR. GOMBERG:      Why are you laughing?

MS. MATHIAS:      I asked him about a white shirt.  It's not - - It's not harassing.

MR. GOMBERG:      Well, why don't you ask him a question you've never asked him before?

MS. MATHIAS:      I don't think you're going to tell me what I'm going to do today here, sir, or I will terminate the dep and we'll go before the judge and talk about that.

MR. GOMBERG:      Well, the judge - - (inaudible due to multiple speakers.)

MS. MATHIAS:      I'm going to move on.

5

BY MS. MATHIAS:

     Q.     I'm going to show you - -

     MR. GOMBERG:     - - any time you want to talk to the judge, be my guest.  The
judge - - Whatever the judge says I'll go along with.

*See* Doc. 48-1 at 27:19-28:19.

Mr. Gomberg instructed Plaintiff not to answer because he believed the question about the
white shirt had been asked and answered earlier in the deposition and the repeated questioning was
harassing.  This is not a valid reason under Rule 30(c)(2) to instruct a witness not to answer.  Rule
30(d)(3) "specifies how harassment is to be handled." *Redwood v. Dobson*, 476 F.3d 462, 467 (7th
Cir. 2007).  At that point, Mr. Gomberg could have "halt[ed] the deposition and appl[ied] for a
protective order" if he believed he had grounds to do so. *Id.*  Mr. Gomberg never terminated the
deposition or stated that he intend to file a motion under Rule 30(d)(3), and his instruction to
Plaintiff not to answer the question was improper.

Mr. Gomberg's single improper instruction not to answer is not sanctionable. *Pain Center
of SE Indiana, LLC v. Origin Healthcare Solutions LLC*, 2015 WL 5775455, at *3 (S.D. Ind. Sept.
30, 2015) (two instances of an improper instruction not to answer was "troubl[ing]" but did not
warrant sanctions).  It is true that Mr. Gomberg failed to file a formal motion after the deposition
and defense counsel repeatedly faults him for failing to do so. *See* Docs. 48 at 4, 60 at 2, 5.  But
after the deposition and five days before Defendant filed its sanctions motion, Mr. Gomberg twice
apologized for his conduct and informed defense counsel that he no longer intended to instruct
Plaintiff not to answer her question at a resumed deposition. Doc. 53-1 at 3 (offering that "when
Mr. Johnson's deposition resumes, I will instruct him to answer said question.").  Mr. Gomberg
cannot be faulted for failing to seek a protective order in such a circumstance.  Moreover, although

Defendant's sanctions motion sought a resumed deposition, Defendant's reply brief states that it "no longer wishes to take the deposition of Plaintiff." Doc. 60 at 2.[3]  The fact that Defendant's counsel has withdrawn her request to resume Plaintiff's deposition indicates that she was able to obtain the facts she was looking for at his deposition and Plaintiff's counsel's conduct as to this question did not actually delay, impede, or frustrate the fair examination.  Defendant's assertion that at a resumed deposition, Plaintiff "will attempt to change his responses . . . rendering the deposition useless" is unfounded by the record and purely speculative. *Id*.  Finally, the question at issue was answered at a prior time during the deposition. *See* Doc. 48-1 at 23:18-24:21, 26:7-10. For all these reasons, the Court concludes that Mr. Gomberg's single instruction not to answer did not actually delay, impede, or frustrate the fair examination of Plaintiff.

Along the same lines, Mr. Gomberg made several "asked and answered" objections when, according to Defendant, the question had not been answered. Doc. 48-1 at 24:9-21; 27:4-7; 36:14-38:6; 38:24-39:7.  Nonetheless, Mr. Gomberg did not instruct his client not to answer these four lines of questioning posed by Defendant's counsel.  Mr. Gomberg says that he "seriously believed that said questions were answered." Doc. 53 at 11.  The Court's review of the transcript indicates that this was not an unreasonable concern with respect to the first three lines of questioning. *See* Doc. 48-1 at 19:2-6, 21:5-11, 21:23-22:1, 22:18-23:10; 25:18-20; 35:1-5, 35:11-19.  In the final instance, defense counsel asked Plaintiff why he thought he had been terminated. *Id*. at 38:21-24. That question had not been clearly asked and answered.  However, one asked and answered objection for a question which had not been answered previously is generally not sanctionable conduct.

---

[3]    After Defendant filed its motion but before its reply brief was filed, the Court granted the parties leave to complete the deposition of Plaintiff outside the discovery deadline and before February 28, 2021. Doc. 58.  Defendant chose not to undertake a resumed deposition.

### 2. Speaking Objection

Defendant next argues that many of Mr. Gomberg's objections at the deposition were verbose, argumentative, and leading, which implicitly instructed Plaintiff how to answer. "Objections that are argumentative or that suggest an answer to a witness are called 'speaking objections' and are improper under Rule 30(c)(2)." *Specht v. Google, Inc.*, 268 F.R.D. 596, 598 (N.D. Ill. 2010). Defendant cites two examples of speaking objections that purportedly instructed Plaintiff how to answer. After one question was asked, Mr. Gomberg instructed Plaintiff: "Don't guess." Doc. 48-1 at 34:14-15. Plaintiff then answered by stating that he was "not sure." *Id*. at 34:18. Mr. Gomberg's "don't guess" instruction can suggest an attempt to coach the witness and is an improper speaking objection. To clarify, if a deponent does not know how to answer a question or does not understand a question, he may so state. The deponent, not counsel, is responsible for seeking clarification of a question if he does not understand. If the deponent's counsel sees a need to clarify the witness' testimony, that must be done at the completion of the deposing attorney's questions.

The second example Defendant cites occurred after Plaintiff testified that he thought he was terminated because of his age:

Q. Is that the only reason?

A. Yes.

Q. What's the basis for that belief?

A. I was the oldest employee they had.

MR. GOMBERG: Harold --

BY MS. MATHIAS:

MR. GOMBERG: - - answer the question.

MS. MATHIAS: Please do not coach the witness.

MR. GOMBERG: I told him to answer the question. Stop raising your voice at me.

*Id*. at 39:10-20. Mr. Gomberg explains that he instructed Plaintiff to answer the question because "Plaintiff started looking at Mr. Gomberg before listing another reason." Doc. 53 at 13. The Court cannot find Mr. Gomberg deficient for instructing Plaintiff to answer the question under these circumstances. Moreover, his instruction to answer the question did not suggest an answer to the question, and therefore, the Court does not find it improper.

### 3. Coaching the Witness

Most troubling, according to Defendant, Mr. Gomberg began to improperly coach Plaintiff what to say off camera as the deposition went on. *See* Doc. 48-1 at 39:18, 40:13-19, 41:16-42:2, 48:23-49:6. "The fact-finding purpose of a deposition requires testimony from the witness, not from counsel, and without suggestions from counsel. Coaching and private conferences (on issues other than privilege) that would be inappropriate during trial testimony are not excused during a deposition merely because the judge is not in the room." *Hunt v. DaVita, Inc.*, 680 F.3d 775, 780 (7th Cir. 2012). On one occasion, defense counsel asked Mr. Gomberg: "What did you just say, counsel?" Doc. 48-1 at 40:15. Plaintiff answered: "He didn't say anything." *Id*. at 40:16. Shortly thereafter, defense counsel asked Plaintiff if Mr. Gomberg was providing answers:

Q.     Is your counsel telling you answers right now, sir?"

A.     No. No. Not at all.

Q.     Okay. Because twice I've heard him say something while you're talking; and on multiple times you're looking at him during your answers. He cannot give you answers.

*Id*. at 41:20-42:2. At a later point, Mr. Gomberg can be heard talking off screen but his words are inaudible:

9

       MR. GOMBERG:     (Inaudible.)

BY MS. MATHIAS:

     Q.     What's Mr. Gomberg saying?

     A.     I don't know.  I can't hear him.

     Q.     Is there anybody else in the room besides you and Mr. Gomberg?

     A.     No.

     MS. MATHIAS:  I'm terminating this deposition, sir.  Since you're coaching the witness, sir, we're going to talk to the Judge.  Thank you.

     MR. GOMBERG:  Bye.

*Id*. at 48:23-49:10.  The deposition was then terminated.

In his response brief, Mr. Gomberg denies coaching the witness.  He notes that the speaking which can be heard in the background of the deposition was likely his assistant Curtis Brown answering the telephone and making calls to clients and Mr. Gomberg's associate, Luanne Galovich, who was working remotely that day.  Mr. Gomberg explains that Mr. Brown's desk was approximately 12 feet from the conference room where the deposition occurred and the conference room door was open.  Further, Mr. Brown provided a declaration stating that once or twice during Plaintiff's deposition, he entered the conference to bring Mr. Gomberg and Plaintiff refreshments and/or documentation. Doc. 53-7 at 2, ¶ 8.  Mr. Brown states that on more than one occasion when he entered the conference room, he and Mr. Gomberg "engaged in brief, low volume conversations." *Id*. at ¶ 9.  As to these background conversations, Mr. Gomberg concludes that "[d]uring an ordinary, in person deposition, the conference room door would be closed and the parties would be together and able to observe any outside distractions." Doc. 53 at 12.  Mr. Gomberg also explains that at the time defense counsel terminated the deposition, he was speaking on his cell phone with Mr. Brown and not listening to the exchange between Plaintiff and defense

10

counsel. According to Mr. Gomberg, "[t]hat is the reason why he did not respond when being accused of 'coaching' the witness." *Id.* at 13. Finally, at a point near the very end of the deposition, defense counsel directed Plaintiff to "[p]lease don't look at your lawyer." Doc. 48-1 at 11. Mr. Gomberg acknowledges that when Plaintiff was asked why he believed he was discriminated against based upon his age, Plaintiff looked at Mr. Gomberg before providing another reason. Doc. 53 at 12-13. In a Rule 37 post-deposition conference between counsel, Mr. Gomberg advised that during a continued deposition of Plaintiff, he would turn the camera so defense counsel could see him as well as Plaintiff and not speak to his staff during the deposition without first taking a break. Docs. 53 at 5, 53-1 at 3.

Having carefully reviewed the transcript and listened to the audio of the deposition, the Court cannot conclude that there was in fact coaching of the deponent by Mr. Gomberg based on the above circumstances. The transcript and audio do not contain any direct evidence of coaching, and the various instances provided by Defendant do not constitute sufficient circumstantial evidence to conclude that Mr. Gomberg was coaching the witness. Mr. Gomberg has properly and credibly attested to the circumstances surrounding these incidents.

However, Mr. Gomberg's unprofessional actions during the deposition did allow the impression that he was coaching. Mr. Gomberg concedes that because his actions were off camera during the deposition, defense counsel "was unable to discern when Mr. Gomberg was talking to his assistant . . . who would, from time to time, step into the conference to give Mr. Gomberg a note or bring water." Doc. 53 at 17. Because Mr. Gomberg can be heard talking in the background on several occasions during the deposition, Plaintiff looked at Mr. Gomberg before providing certain answers, and Plaintiff testified that no one else was in the room, defense counsel's concern

that Mr. Gomberg was speaking to Plaintiff when he can be heard talking during the questioning was reasonable.

As a further explanation, Mr. Gomberg goes on to admit that he is not "technologically savvy" and suggests that his "problems using technology [] contributed to the frustration of [defense counsel] during the deposition." Doc. 53 at 16. He adds that "[o]rdinarily, when parties are in the same room without outside distractions, it is easier to focus on the deposition[] taking place." *Id*. at 16-17. Mr. Gomberg's response brief concludes by stating that "had circumstances been different, the parties would have been together in Defendant's conference room and many, if not all of Defendant's complaints raised during the deposition would have been dealt with either because the parties did not have to navigate Zoom or because they would have had to sort out their disagreements in person." *Id*. at 19.

Mr. Gomberg's reliance on circumstances created by remote depositions during the global pandemic to explain the difficulties at Plaintiff's deposition is not well taken. The Court recognizes that the pandemic has created challenges associated with conducting depositions remotely. However, at the time of the deposition, lawyers across the country had been primarily conducting their practices using technology for ten months. This has included a host of different videoconferencing platforms for court hearings, depositions, and appellate arguments. Thus, while Mr. Gomberg's lack of technology expertise may have sufficed as an explanation at one point in time, it is no longer valid or credible.[4]

Nevertheless, it was not technology problems that caused difficulties at Plaintiff's deposition, but rather the lack of the required collegiality and professionalism. The same basic

---

[4] The Court appreciates the assistance of defense counsel in helping Mr. Gomberg resolve technology issues and locate, organize, and screen share Plaintiff's exhibits during the remote deposition of Michael Barone.

standards of civility and decency that govern in-person depositions apply to remote video depositions. In other words, conduct that is not permissible during an in-person questioning of a deponent is generally not permissible at a remote video deposition. During an in-person or remote deposition, counsel are expected to cooperate and be courteous and respectful to each other. *See* Fed. R. Civ. P. 30(d)(3), Advisory Committee Notes to 1993 Amendments ("In general, counsel should not engage in any conduct during a deposition that would not be allowed in the presence of a judicial officer."); *see also* Seventh Circuit's Standards for Professional Conduct, "Lawyers' Duties to Other Counsel," Std. No. 20. For example, as relevant to this case, during a deposition, even one that is conducted via videoconferencing technology: counsel should not interrupt or speak over each other or the deponent; counsel should not raise his or her voice with opposing counsel or to yell to a staff member in another room; counsel should not make or receive phone calls; the door to the conference room where the deposition is taking place should be shut to avoid outside interruptions; and extraneous conversations with staff should occur exclusively during breaks to minimize interruptions in the questioning and claims the witness is being coached.

The nature of a videoconference deposition can lend itself to assumptions that a witness is being coached when the defending attorney is off camera. Witnesses often look to their attorney before answering because they are told to pause before answering to allow an objection to be recorded. The combination of these events can easily result in the impression that a witness is being coached by counsel. In the future, counsel defending a videoconference deposition should ensure that they can be viewed on camera with the deponent. This can easily be done by counsel either appearing with the witness in one screen, or with social distancing by setting up a second device that is logged into the deposition with the second camera facing counsel but placed on mute. The Court also expects counsel in all cases before it to work together in good faith and agree to

protocols to ensure that depositions by remote videoconferencing are transparent and professional, just as they would during an in-person deposition.

### 4. Other Allegations of Misconduct

Last, defense counsel complains of Mr. Gomberg's "general obstructiveness" during this case. Doc. 48 at 6-8. She cites to Mr. Gomberg allegedly ignoring requests to schedule Plaintiff's deposition for months, his multiple interruptions during Plaintiff's deposition, his yelling at his assistant at the beginning of the deposition, his purported unreasonableness during discovery conferences, and his filing a motion to compel even though Defendant agreed to produce records. Defendant's counsel provides instances where Mr. Gomberg interrupted the witness or defense counsel at Plaintiff's deposition. Doc. 48-1 at 21:18, 30:17-22, 39:14. One interruption involved Mr. Gomberg asking Plaintiff if he wanted some water while defense counsel was in the middle of asking a question. This led to a heated exchange between counsel about Mr. Gomberg's interruptions and Mr. Gomberg yelling to his assistant in another room to bring water. *Id*. at 30:16-32:10.

Defendant's counsel also claims that "Plaintiff's pattern of abuse of the litigation process has been clear from the outset" because Plaintiff, a white male, initially brought a charge for race discrimination and "Plaintiff's age discrimination case is equally baseless." Doc. 48 at 6-7. Defense counsel believes that Mr. Gomberg engaged in misconduct after Plaintiff's deposition was terminated because after apologizing twice at a Rule 37 conference and offering to consider paying the court reporter fees and transcript fees, he sent an email memorializing the conference that failed to mention fees.

In sum, as to Mr. Gomberg's deposition conduct, no sanctions are warranted. Mr. Gomberg improperly instructed Plaintiff not to answer one question in violation of Rule 30(c)(2) and his

"don't guess" speaking objection was improper. The Court admonishes Mr. Gomberg for instructing the witness not answer and engaging in a speaking objection. The Court also admonishes Mr. Gomberg for interrupting counsel with his request for a beverage mid-question. However, beyond the issuance of this opinion, the Court, in its discretion, declines to impose sanctions. After reviewing the transcript and listening to the audio of the deposition, the Court cannot conclude that Mr. Gomberg's conduct was so egregious as to justify sanctions. To be crystal clear, Mr. Gomberg's interruptions and extraneous conversations were not appropriate or professional. However, they were not so disruptive to the point that Defendant was denied a full and fair opportunity to depose Plaintiff. This determination is supported by the fact that Defendant does not believe it is necessary to re-depose Plaintiff. Plaintiff generally answered the questions despite Mr. Gomberg's objections. In declining to assess sanctions, the Court has also considered that similar conduct was not repeated at three later depositions taken in this case. Doc. 59 at 2 (defense counsel reporting that three later depositions of Statewide representatives "were done with out incident and cooperatively."). Mr. Gomberg has also apologized for his behavior after the deposition in question.

Defendant's other "general obstructiveness" complaints and the inappropriate tone of some of the filings capture the deeper problem in this case. Mr. Gomberg and defense counsel have a very contentious relationship, and their interactions are troubling. As this Court has previously noted in this matter, there has been a breakdown of civility and professionalism among counsel during the discovery phase of this case. The filings during the weeks leading up to Plaintiff's deposition reflect this fact.

In a November 13, 2020 motion seeking a two-week extension for Defendant to provide documents requested in Plaintiff's motion to compel, defense counsel stated that a Rule 37 call

between counsel "was unproductive and ended up in Plaintiff's counsel hanging up during the middle of the call." Doc. 39 at 1. Plaintiff then filed a four-page response devoted to answering "Defendant's counsel's representations to the Court." Doc. 40 at 2. Mr. Gomberg explained that he had remained on the call but allowed his associate to conclude the discussion without his contribution because of the "contentiousness between [defense counsel] and Mr. Gomberg." *Id*. Subsequent to these filings, the Court directed counsel to seek to resolve any further disputes regarding Defendant's document production expeditiously and without judicial intervention. Doc. 42.

Defendant's counsel then demonstrated her own uncivil conduct in this case. Two days after the above order, Defendant filed an insult-laden response to Plaintiff's motion to compel complaining: (1) "Plaintiff's Motion to Compel is a continuation of his strategy from the outset – throw anything against the wall to see what sticks for the purpose of increasing the cost of litigation"; "Plaintiff, a white male, initially brought a claim with the EEOC for Race Discrimination"; "Plaintiff was a long-time friend of the owners of Statewide and yet brings this meritless action out of spite"; "Plaintiff takes positions that fly in the face of reality"; "Plaintiff's obvious goal [is] causing enough financial ruin to Statewide that it has to close its doors"; "Plaintiff will interfere with Statewide's remaining clients and employees"; "A recent example of the obnoxiousness of Plaintiff's litigation strategy is the response to Statewide's request for a few more days to produce records"; "Plaintiff is completely unreasonable at every turn"; and "There has not been one task on this case that has been properly handled by Plaintiff." Doc. 44 at 1-3 (emphasis in original). Advocacy, practiced with civility, does not look like this. Indeed, the day after Defendant's filing, the Court "advise[d] both counsel to turn the temperature down and work

cooperatively and civilly to complete discovery in this case." Doc. 45. It is not surprising that this deposition went south so quickly given the hostility that had been building up in this case.

Moreover, both counsel disregarded the Court's warning to decrease the animosity and work cooperatively together at Plaintiff's deposition. The Court wishes to emphasize this point, if not already clear: the Court will not tolerate incivility and lack of professionalism among counsel. "A lawyer's conduct should be characterized at all times by personal courtesy and professional integrity to the fullest sense of those terms." Preamble of the Seventh Circuit's Standards for Professional Conduct. This means that lawyers should refrain from conduct that is "uncivil, abrasive, abusive, hostile, or obstructive" because "[s]uch conduct tends to delay and often deny justice." *Id*. There is a clear pattern of uncivil conduct here, and counsel's personal animus reflects a lack of professionalism. It is cases like these that leave the Court to wonder why the practice is called "civil litigation" – the attorneys' conduct here has been anything but civil. The breakdown in professionalism among counsel during the course of discovery caused the mistrust and inability to work cooperatively together at Plaintiff's deposition and to subsequently resolve the deposition issues without involving the Court. Counsel's dislike for each other, combined with a level of unprofessionalism, has resulted in any dispute in this case going from an intensity level of zero to ten in a moment's notice. Counsel's behavior has also caused the Court to spend valuable time and resources addressing Defendant's sanctions motion. The Court is reluctant to engage in the practice of admonishing both sides when one side raises issues of unprofessionalism. However, in this case, it is warranted.

The Seventh Circuit has made clear that "civility in litigation is extremely important to the practice of law in this Circuit and in all other courtrooms." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 946 (7th Cir. 1997); *see also Castillo v. St. Paul Fire & Marine Ins. Co.*, 938 F.2d

776, 779 (7th Cir. 1991) ("professional incivility [is] a situation of general concern in this circuit and elsewhere."). As the Seventh Circuit has also noted, "[m]ost depositions are taken without judicial supervision. . . . so unless counsel maintain professional detachment decorum can break down." *Redwood*, 476 F.3d at 467. "It is precisely when animosity runs high that playing by the rules is vital. Rules of legal procedure are designed to defuse, or at least channel into set forms, the heated feelings that accompany much litigation. Because depositions take place in law offices rather than courtrooms, adherence to the professional standards is vital, for the judge has no direct means of control." *Id.* at 469.

At this point, the Court reminds counsel of the relevant portions of four professional standards which govern lawyers participating in litigation in this Circuit: (1) We will practice our profession with a continuing awareness that our role is to advance the legitimate interests of our clients. In our dealings with others we will not reflect the ill feelings of our clients. We will treat all other counsel, parties, and witnesses in a civil and courteous manner, not only in court, but also in all other written and oral communications; (2) We will not, even when called upon by a client to do so, abuse or indulge in offensive conduct directed to other counsel, parties, or witnesses. We will abstain from disparaging personal remarks or acrimony toward other counsel, parties, or witnesses; (3) We will not, absent good cause, attribute bad motives or improper conduct to other counsel or bring the profession into disrepute by unfounded accusations of impropriety; and (4) We will speak and write civilly and respectfully in all communications with the court. Seventh Circuit's Standards for Professional Conduct, "Lawyers' Duties to Other Counsel," Std. Nos. 1, 2, 4 and "Lawyers' Duties to the Court," Std. No. 1. The Seventh Circuit "expects judges and lawyers to make a mutual and firm commitment to these standards," which are designed to encourage us "to meet our obligations to each other, to litigants and to the system of justice, and thereby achieve

the twin goals of civility and professionalism, both of which are hallmarks of a learned profession dedicated to public service." Preamble of the Seventh Circuit's Standards for Professional Conduct.

Having said all this, the Court is convinced that mutual courteous, professional, and respectful conduct by both counsel towards opposing counsel would have alleviated the concerns expressed in Defendant's sanctions motion and allowed for the civil completion of Plaintiff's deposition. In the Court's view, this was an unnecessary motion which could and should have been avoided. The Court expects better from counsel moving forward and trusts that publication of this opinion will be sufficient to deter similar discovery conduct by counsel in this case or by lawyers in other cases before this Court.

**B.     Plaintiff's Motion for Sanctions**

Plaintiff's motion for sanctions seeks to preclude testimony by five witnesses whom Defendant first identified in an updated interrogatory answer on December 31, 2020, the last day of fact discovery: Scott Alberts, Giselle Pikor, Steve Malopy, Will Betancourt, and Louis Kuszynski. Plaintiff argues that these five witnesses were disclosed too late. In response, Defendant argues that it was under no duty to disclose the witnesses because the majority of the witnesses will be used to impeach Plaintiff Johnson's testimony. Specifically, Defendant contends that the witnesses will be used to impeach Plaintiff's deposition testimony that he was never a supervisor at Statewide and that a supervisor had been hired on the relevant job site after Plaintiff was terminated. Defendant further contends that Plaintiff had reason to know during the discovery period that Louis Kuszynski likely had discoverable information. Lastly, Defendant argues that its witness disclosure at the conclusion of fact discovery was justified because during his deposition, Plaintiff "changed his entire theory of the case" when he stated that he was never a supervisor for Defendant and he "made a new allegation that he had seen a supervisor at the client

location after Mr. Johnson's position was eliminated." Doc. 59 at 4.[5] For the reasons that follow, Plaintiff's motion for sanctions is denied.

Federal Rule of Civil Procedure 26(a)(1) requires parties "without awaiting a discovery request," to provide, among other things, the name and contact information "of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support is claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). Under Rule 26(e), a party who has made a disclosure under Rule 26(a) or who has responded to an interrogatory must supplement its disclosure or response "in a timely manner" when it "learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). "If a party fails to . . . identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that . . . witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Under Rule 37(c)(1), 'exclusion of non-disclosed evidence is automatic and mandatory . . . unless non-disclosure was justified or harmless.'" *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012), as amended (Feb. 2, 2012) (quoting *Musser v. Gentiva Health Serv's.*, 356 F.3d 751, 758 (7th Cir. 2004)). Finally, "[d]istrict courts have broad discretion to determine whether [a party's] failure to comply with Rule 26(e) is substantially justified or harmless." *Sys. Dev. Integration, LLC v. Computer Sciences Corp.*, 2012 WL 2953063, at *2 (N.D. Ill. July 19, 2012).

---

[5]     Plaintiff denies that he made a new allegation that he had seen a supervisor at his former work location, and he cites to his attached deposition testimony. Doc. 61 at 5-6. The Court disregards Defendant's assertion that "Plaintiff [] claimed during the deposition of Statewide representatives that he came to the relevant location and saw a replacement supervisor," because it does not attach the depositions as an exhibit to its motion. *King v. Ford Motor Co.*, 872 F.3d 833, 838 (7th Cir. 2017); Doc. 59 at 4.

Defendant begins by arguing that it did not have a duty to disclose because the "majority of witnesses" will be called to offer testimony to impeach Plaintiff's testimony. Doc. 59 at 1. Rule 26(a) requires disclosure of individuals likely to have discoverable information "unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). The Court does not need to decide whether any of the witnesses fall within Rule 26(a)(1)(A)(i)'s impeachment exception because a failure to timely disclose their identities in response to Plaintiff's Interrogatory No. 2 would standing alone violate Rule 26(e). Plaintiff issued an interrogatory that required the names of "all individuals with knowledge and/or who claim to have knowledge (whether personal, firsthand, or otherwise) of any fact or occurrence alleged in the Complaint, Answer, and/or Affirmative Defenses and, as to each individual, state in detail the subject matter about which he/she has knowledge." Doc. 54-1 at 3. Under Rule 26(e), "a party who has made a disclosure under Rule 26(a)—*or who has responded to an interrogatory* . . . must supplement or correct its . . . response . . . in a timely manner if the party learns that in some material respect the . . . response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). "No impeachment exception exists for interrogatory responses." *Rivera v. United Parcel Service*, 325 F.R.D. 542, 547 n. 5 (S.D. N.Y. May 24, 2018); *Cooper v. Majestic Mississippi, LLC*, 2020 WL 2747243, at *3 (N.D. Miss. May 27, 2020). Defendant does not contend that impeachment evidence need not be disclosed pursuant to a discovery request. In fact, Defendant believed it was required to supplement its answer to Plaintiff's second interrogatory but failed to identify the five additional witnesses until the very last day of fact discovery.

The Court next considers whether Defendant's supplemental interrogatory answer was timely under Rule 26(e). Plaintiff asserts, and Defendant does not dispute, that Defendant has been aware of Plaintiff's claim that he was not a supervisor at the time of his termination since the

fact finding conference at the Illinois Department of Human Rights. Moreover, Defendant was made aware of Plaintiff's allegation that he was not a supervisor at the time of his termination in Plaintiff's September 18, 2020 Rule 37 discovery letter regarding Defendant's objections to Plaintiff's Interrogatory No. 16. Plaintiff's Interrogatory No. 16 asked Defendant to identify the individuals Plaintiff supervised from February 4, 2015 through February 4, 2019. Doc. 61-2 at 8. In his September 18, 2020 letter, Plaintiff's counsel wrote: "Defendant has placed into question whether Plaintiff was a supervisor so the information is relevant. *Plaintiff denies being a supervisor at the time of his termination* and, therefore, requires information concerning who Defendant claims he supervised . . . ." *Id*. at 9 (emphasis added). Yet, the five additional witnesses were not disclosed to Plaintiff until December 31, 2020, which was 27 days after Plaintiff's deposition and more than three months after the latest date Defendant learned of Plaintiff's claim that he was not a supervisor at the time of his termination. Thus, Defendant violated Rule 26(e)(1)(A) by failing to supplement its interrogatory answer "in a timely manner" upon learning that it was incomplete. *Sys. Dev. Integration*, 2012 WL 2953063, at *2 ("Rule 26(e) requires a party to *timely* supplement its initial disclosures and discovery responses when it learns of new information or information that renders an earlier response inaccurate.") (emphasis in original).

Having found that Defendant's supplemental answer to Interrogatory No. 2 was not timely, the Court turns to whether its failure to comply with Rule 26(e) was substantially justified or harmless. Defendant argues that its late disclosure was substantially justified because Plaintiff "changed his entire theory of the case during his deposition" by stating that he was never a supervisor at Statewide.[6] Defendant contends that the additional witnesses could not have been

---

[6] Defendant's stated reason for Plaintiff's termination is that his supervisor position was eliminated. Defendant states: "Defendant decided to eliminate the position of supervisor at the relevant client location and not to employ a full-time supervisor at that site. Defendant determined

disclosed earlier because it "had only a few weeks to scramble" "to uncover witnesses to rebut

Plaintiff's new allegations—while also participating in multiple days of depositions, filing a

Motion for Sanctions for Plaintiff's misconduct, etc." Doc. 59 at 5. In response, Plaintiff asserts

that he did not change his theory of the case. Plaintiff's theory of the case is:

> Plaintiff was hired as a supervisor by Defendant. In 2017, he was informed by Mr.
> Barone that he was no longer a supervisor. When he was told he was being
> terminated in February 2019, he informed Defendant that he was willing to be
> transferred to another position. Defendant refused to place him in a different
> position but then hired several individuals within weeks (according to Defendant's
> own records produced after the filing of Plaintiff's Motion to Compel) of Plaintiff's
> termination. Plaintiff was one of the oldest, if not the oldest, security guard working
> for Defendant at his work location. Plaintiff was older than most, if not all, security
> guards by at least 10 years. . . . His position as a "supervisor" was not eliminated
> because he was not a supervisor at the time of his discharge.

Doc. 61 at 2-3. Plaintiff states that he still contends that he was no longer a supervisor as of 2017,

and that he remained a non-supervisory employee until his termination on February 4, 2019.

To justify its belated witness disclosure based on Plaintiff allegedly changing his theory of

the case, Defendant relies on Plaintiff's answer to its Interrogatory No. 8 and his deposition

testimony. In its Interrogatory No. 8, Defendant asked: "Were you a supervisor during your

employment with Statewide? If no, identify all reasons why you believe you were not a supervisor

at the time of termination." Doc. 59 at 17. In his answer dated November 29, 2020, Plaintiff stated:

> Plaintiff was a not a supervisor at the time of his termination of his employment.
> Plaintiff previously worked as a supervisor for Defendant and wore a white shirt. .
> . . Plaintiff states that in approximately May 2017 (two years prior to his
> termination), Plaintiff was advised by Mike Barone that he would no longer be
> considered a supervisor and that he would lose his yearly two weeks of vacation.
> Plaintiff was informed that he did not need to purchase a blue shirt but could
> continue to wear his white shirt.

---

that it no longer required a supervisor at the work location, the supervisory work became
unnecessary and did not add value enough to justify a full-time supervisor at that location." Doc.
37-1 at 5, Defendant's Answer to Plaintiff's Interrogatory No. 5 dated July 20, 2020; *see also*
Defendant's Answer to Plaintiff's Interrogatory Nos. 8, 9, 12.

*Id*. Consistent with his answer to Defendant's Interrogatory No. 8, Plaintiff Johnson testified at his December 4, 2020 deposition that he was hired as a supervisor and then told by Mr. Barone in 2017 that he was no longer a supervisor. Doc. 68-1 at 19:2-6, 20:14-15, 20:22-21:17, 21:23-22:8. Later at the deposition, Plaintiff testified: he did not have authority over the other guards during his tenure at Statewide, he never heard Mr. Barone or anyone else at Statewide telling the guards that Plaintiff was the supervisor, he was never introduced as a supervisor at group meetings at that location, and that based on the fact that he wore a white shirt and the rest of the guards wore a blue shirt, Plaintiff did not believe he was ever a supervisor at that location for Statewide. *Id*. at 22:9-12, 23:6-10, 23:11-17, 23:18-24:21.

Defendant has not shown that Plaintiff's deposition testimony actually changed his theory of the case. At most, the transcript demonstrates that the portions of Plaintiff's deposition testimony cited by Defendant were inconsistent with his interrogatory answer and other portions of Plaintiff's deposition testimony, not that Plaintiff's "theory of the case changed completely" at his deposition. Doc. 59 at 4. The inconsistency highlighted by Defendant concerns whether Plaintiff was ever a supervisor at Statewide as opposed to whether he was a supervisor when he was hired until 2017. But the relevant time period is when Plaintiff was terminated in 2019. Plaintiff's allegation that he was not a supervisor at the time of his termination has not changed; it was always part of the theory of his case. Merely pointing out an alleged inconsistency between an interrogatory answer and subsequent deposition testimony concerning whether Plaintiff was a supervisor prior to 2017 does not justify Defendant's disclosure of the five additional witnesses on the last day of fact discovery.

Defendant further insists that although it did not disclose the existence of Louis Kuszynski until the last day of fact discovery, he was otherwise made known to Plaintiff during the discovery

process. There is "no obligation to provide supplemental or corrective information that has been otherwise made known to parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition." Fed. R. Civ. P. 26(e), Advisory Committee Notes to 1993 Amendments. Defendant's supplemental interrogatory answer indicates that the subject of Mr. Kuszynski's knowledge is that no other supervisors have worked at the relevant location since Plaintiff was terminated, including on the day Mr. Kuszynski observed Plaintiff at the work location following his termination. Defendant states that it updated its interrogatory answer to include Mr. Kuszynski as a possible witness "to make clear the scope of [his] knowledge and to rebut the new allegation that Mr. Kuszynski was the new supervisor that Plaintiff now claims he saw on site." Doc. 59 at 5. Defendant claims Plaintiff knew the identity of Mr. Kuszynski because his name "came about during the deposition" of Mike Barone and his name was included in documents produced by Statewide on November 13, 2021. *Id*. at 4-5.

However, that these discovery materials included Mr. Kuszynski's name does not mean that Plaintiff knew or should have known that he was a potential witness and the basic subject matter of his knowledge. Because Defendant does not provide the discovery materials it cites for the Court's review, the Court cannot determine that they are the functional equivalent of an updated interrogatory answer. *King*, 872 F.3d at 838, n.1 (rejecting plaintiff's argument that "Morton's name had come up in discovery, so [defendant] knew about him and could have deposed him" because "the record did not reveal anything that would have adequately disclosed Morton as a witness on the topics covered in his declaration."). Thus, Defendant was obligated to timely supplement its interrogatory answer to identify Mr. Kuszynski. Moreover, this argument only relates to one witness, leaving four other witnesses that were belatedly disclosed on the last day of discovery.

The next issue then is whether Defendant's failure to timely supplement its answer to Plaintiff's second interrogatory was harmless. In determining whether a Rule 26 violation is harmless, a court considers four factors: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption of the trial and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *Tribble*, 670 F.3d at 760 (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)). Applying the first *David* factor, Defendant's failure to comply with Rule 26(e) is not harmless because Plaintiff suffered prejudice from receiving the witness names on the last day of fact discovery. Plaintiff was thus denied the opportunity to take depositions of the five additional witnesses. *King*, 872 F.3d at 838 (7th Cir. 2017) ("[T]here is obvious prejudice in failing to disclose . . . a witness during discovery, as that prevented [defendant] from deposing [the witness] and conducting any appropriate follow-up discovery, so the violation was not harmless"); *Jokich v. Rush University Medical Center*, 2020 WL 2098060, at *4 (N.D. Ill. May 1, 2020) (finding prejudice where plaintiff's late disclosures three days before the close of discovery "effectively prevented [defendant] from taking discovery during the previously-set discovery period on the new witnesses and information provided"). Turning to the next *David* factor, Plaintiff did not have the ability to cure the prejudice from Defendant's late disclosure as it occurred on the last day of the fact discovery period. *Doe 1 v. City of Chicago*, 2019 WL 5290899, at *9 (N.D. Ill. Oct. 18, 2019) ("Because fact discovery had been closed . . . Defendant could not cure the prejudice without the cooperation of Plaintiffs, and order from this Court reopening discovery."). Under the third *David* factor, no trial date has been set in this case. As to the final factor, the Court finds no evidence that Defendant acted willfully and in bad faith in not identifying the witnesses earlier.

Under the circumstances presented here, the Court declines to impose the "extreme and harsh" sanction of exclusion. *Doe 1*, 2019 WL 5290899, at *9. The final three *David* factors weigh in favor of a limited re-opening of fact discovery to allow Plaintiff to depose the newly identified witnesses. The prejudice to Plaintiff can be easily remedied by affording Plaintiff the time necessary to depose the newly disclosed witnesses. A limited reopening of fact discovery at this stage would not unduly delay the resolution of this case as no dispositive motion or trial dates have been set by the district court. *Id*. ("Because no trial date is in place, and summary judgment briefing has not yet commenced, the Court can reopen discovery for the limited purpose of addressing the discovery issues relating to" Plaintiffs' late disclosure of witnesses); *Rivera*, 325 F.R.D. at 547 (reopening discovery rather than precluding testimony of witnesses disclosed on the last day of fact discovery where "no summary judgment schedule has been ordered, and no trial date has been set.").

Accordingly, the Court denies Plaintiff's motion for sanctions. The Court will re-open discovery until April 16, 2021 for the limited purpose of allowing Plaintiff to depose Scott Alberts, Giselle Pikor, Steve Malopy, Will Betancourt, and Louis Kuszynski regarding the facts asserted in Defendant's updated answer to Plaintiff's second interrogatory. These depositions will be limited to one hour each and conducted via videoconference. If Plaintiff chooses to depose these witnesses, he will not incur any more costs than he would have had he taken their depositions earlier. *Gardner v. Johnson*, 2009 WL 5215589, at *6 (N.D. Ill. Dec. 30, 2009). Defendant will thus not be required to pay for depositions that would have occurred absent the late witness disclosure. *Id*; Fed. R. Civ. P. 37(c)(1)(A) ("If a party fails to . . . identify a witness as required by Rule 26(a) or (e) . . . [the court] may order payment of the reasonable expenses, including attorney's fees, caused by the failure"). Plaintiff is not entitled to re-depose other deponents about

the newly disclosed witnesses at this time. After the depositions of the newly disclosed witnesses, Plaintiff may, if necessary, seek leave to re-depose other deponents about these witnesses and the subject of their testimony upon a showing of sufficient reasons, consistent with the principles set forth in Rule 26(b)(1) and (2). Fed. R. Civ. P. 30(a)(2).

If Defendant agrees not to offer the testimony of these witnesses for any purpose (including impeachment) in a motion, at trial, or in any other proceeding in this action, all fact discovery will remain closed. *Rivera*, 325 F.R.F. at 548. If Defendant choses this option, it must notify the Court in the joint status report due March 18, 2021.

**C.     Conclusion**

For these reasons, Defendant's motion for sanctions [48] and Plaintiff's motion for sanctions [54] are both denied. The portion of Defendant's motion seeking to re-depose Plaintiff is denied as moot. In the status report due March 18, 2021, Defendant shall indicate if it agrees not to offer the testimony of Scott Alberts, Giselle Pikor, Steve Malopy, Will Betancourt, and Louis Kuszynski for any purpose. If so, all fact discovery will remain closed. If not, the Court will reopen fact discovery until April 16, 2021 for the limited purpose of permitting Plaintiff to take one-hour videoconference depositions of these five witnesses regarding the facts asserted in Defendant's supplemental answer to Plaintiff's second interrogatory.

**SO ORDERED.**

Dated:  March 4, 2021

_____
Sunil R. Harjani
United States Magistrate Judge